## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

PAUL N. ROYAL as Administrator *Ad Litem* for the Estate of
RICKY JAVENTIA BALL, Deceased, and on behalf of All
Wrongful Death Beneficiaries,

      Plaintiff,

vs.

Docket No.: 1:16cv176-GHD-SAA

**JURY DEMANDED**

CANYON BOYKIN, Individually and
in his Official Capacity as an Officer of the
Columbus Police Department;
JOHNNY BRANCH, Individually and
in his Official Capacity as an Officer of the
Columbus Police Department;
YOLANDA YOUNG, Individually and
in her Official Capacity as an Officer of the
Columbus Police Department;
GARRETT MITTAN, Individually and
In his Official Capacity as an Officer of the
Columbus Police Department;
JOHN DOES I-X, Individually and
in their Official Capacity as Officers of the
Columbus Police Department;
TONY CARLETON, Individually and
in his Official Capacity as Chief of Police of
the Columbus Police Department;
CITY OF COLUMBUS, MISSISSIPPI,

      Defendants.

### COMPLAINT

COMES NOW the Plaintiff, Paul N. Royal, as Administrator *Ad Litem* for the Estate of

Ricky Javentia Ball, deceased, and on behalf of all wrongful death beneficiaries, by and though

counsel of record and files this Complaint on behalf of Ricky Javentia Ball, deceased (hereinafter

referred to as "Decedent Ball") and all of his wrongful death beneficiaries against the Defendants,

both jointly and severally and for cause of action would state as follows:

1

## (I)
## INTRODUCTION

1.      This cause of action arises from the wrongful death of Ricky Javentia Ball, who was shot and killed by Columbus Police Officer Canyon Bolton on October 16, 2015. At the time of the killing, Defendant Boykin was acting under color of law and as a law enforcement officer of the City of Columbus Police Department. After the killing of Decedent Ball by Defendant Boykin, an investigation of the shooting was conducted by various law enforcement agencies, including the Mississippi Bureau of Investigation and the District Attorney's Office. As a result of these investigations, Defendant Boykin was indicted for manslaughter for the killing of Decedent Ball (Circuit Court of Lowndes County, Docket No. 2016-0305-CRIC).

2.      After the death of Decedent Ball, Plaintiff's counsel made a Public Records Request for documents pertaining to this action, this incident and the subsequent investigations from the following governmental entities: 1) City of Columbus; 2) Columbus Police Department; 3) Lowndes County Sheriff's Office; 4) Lowndes County District Attorney's Office; 5) Mississippi Bureau of Investigation; and 6) Federal Bureau of Investigation. However, these governmental entities, excluding the Lowndes County Sheriff's Office, refused to provide the requested documents, claiming there was an ongoing criminal investigation of Defendant Boykin and, therefore, the records were not subject to disclosure. Thereafter, Plaintiff filed a Petition for Discovery in Chancery Court of Lowndes County, Mississippi, Docket No. 2016-0328-B, and subpoenaed the records from the same governmental entities. However, the Plaintiff were again refused access to the records based on an ongoing criminal investigation of Defendant Boykin. Further, after being denied access to the records pertinent to this case by the law enforcement entities, Plaintiff's counsel spoke to the District Attorney's Office to obtain the records to review under a protective order, but were again refused access to the pertinent records and investigation.

2

As Decedent Ball was killed by Defendant Boykin, Plaintiff submits that the documents and things requested under the Public Records Act and subpoenaed should be provided to Plaintiff to allow them to more fully investigate this matter. *See Bazan v. Hidalgo County*, 246 F.3d 481, 492-493 (5th Cir. 2001). Accordingly, at the time of the filing of this Complaint, the Plaintiff has been refused access to pertinent records and expressly reserves the right to amend this complaint and add additional allegations and/or parties upon receipt of the pertinent records and identification of additional facts and/or parties.

## (II)
## PARTIES

3.     The Plaintiff, Paul N. Royal, (hereinafter "Plaintiff") is an attorney at Crislip, Philip and Royal, located at 5170 Sanderlin Avenue, Suite 201, Memphis, TN 38117, and is the duly appointed Administrator *Ad Litem* of the estate of Ball, by Order of The Probate Court of Shelby County, Tennessee, Docket No. PR-6843-I, entered on August 24, 2016. Plaintiff Royal is an adult citizen of the United States citizen and a resident of Shelby County, Tennessee. Plaintiff Royal brings this suit on behalf of the Decedent Ball, Decedent Ball's estate, and all of the wrongful death beneficiaries of Decedent Ball, including his minor child, M.H.

4.     Upon information and belief, Defendant Canyon Boykin is an adult, Caucasian resident of Columbus, Lowndes County, Mississippi. At all times material hereto, Defendant Boykin was employed by the City of Columbus as a law enforcement officer, acting under color of state law and acting in the course and scope of his employment. Defendant Boykin is sued in his individual capacity and in his official capacity as a police officer with the Columbus Police Department.

5.     Upon information and belief, Defendant Johnny Branch is an adult, Caucasian resident of Columbus, Lowndes County, Mississippi. At all times material hereto, Defendant

Branch was employed by the City of Columbus as a law enforcement officer, acting under color of state law and acting in the course and scope of his employment. Defendant Branch is sued in his individual capacity and in his official capacity as a police officer with the Columbus Police Department.

6.     Upon information and belief, Defendant Yolanda Young is an adult, African American resident of Columbus, Lowndes County, Mississippi. At all times material hereto, Defendant Young was employed by the City of Columbus as a law enforcement officer, acting under color of state law and acting in the course and scope of her employment. Defendant Young is sued in her individual capacity and in her official capacity as a police officer with the Columbus Police Department.

7.     Upon information and belief, Defendant Garrett Mittan is an adult, Caucasian resident of Columbus, Lowndes County, Mississippi. At all times material hereto, Defendant Mittan was employed by the City of Columbus as a law enforcement officer, acting under color of state law and acting in the course and scope of his employment. Defendant Mittan is sued in his individual capacity and in his official capacity as a police officer with the Columbus Police Department.

8.     Upon information and belief, Defendants JOHN DOES I-X are adult residents of Columbus, Lowndes County, Mississippi whose identities are presently unknown. At all times material hereto, Defendants JOHN DOES I-X were employed by the City of Columbus, acting under color of state law and acting in the course and scope of his/her employment. Defendants JOHN DOES I-X are sued in their individual capacity and in their official capacities as employees of the City of Columbus.

4

9.      Upon information and belief, Defendant Tony Carleton is an adult, Caucasian resident of Columbus, Lowndes County, Mississippi.  At all times material hereto, Defendant Carleton was the Chief of Police for the City of Columbus.  As Chief of Police, Defendant Carleton was the chief law enforcement officer and final policymaker for the City of Columbus Police Department and was responsible for the establishment and enforcement of the policies, practices and customs of the Columbus Police Department (CPD).  Further, as Chief of Police of the CPD, Defendant Carleton was responsible for the hiring, training, supervision and discipline of the law enforcement officers under his command. Defendant Carleton was under a constitutional duty to run the policing activities of the CPD in a lawful manner and to preserve the peace of the City of Columbus and to preserve the rights, privileges and immunities guaranteed and secured to citizens by the constitutions and laws of the United States and the State of Mississippi.  Defendant Carleton is sued individually and in his official capacity as Chief of the Columbus Police Department.

10.      Defendant City of Columbus, Mississippi is in Lowndes County, Mississippi; it is a municipal entity and a political subdivision of the State of Mississippi.   Among its other functions, the Defendant City of Columbus operates and maintains a law enforcement agency called CPD for which it employs various deputies and other personnel. Defendant City of Columbus is under a duty to ensure its policing activities are operated in a lawful manner so as to preserve the peace of the City of Columbus and to preserve its citizens the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the United States and the State of Mississippi.  Defendant City of Columbus, by and through Chief Carleton and its other officials, is responsible for ensuring the establishment and enforcement of rules, regulations, procedures, policies, practices, and customs for the CPD, including hiring, training, supervision and discipline of law enforcement officers and other employees.

5

## (III)
## JURISDICTION AND VENUE

11.     This civil rights action is brought pursuant to 42 U.S.C. §§ 1981, 1983 & 1985 & 1986. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(a)(1), (3), and (4). Accordingly, this Honorable Court has jurisdiction over all of the claims asserted herein.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the defendants reside in the Northern District of Mississippi and all of the relevant events occurred in within this District.

13.     Each and all of the acts of the Defendants and employees or agents of the City of Columbus involved in this incident were performed under the color and pretense of the constitutions, statues, ordinances, regulations, customs and usages of the United States of America, the State of Mississippi, under the color of law and by virtue of their official office and authority as law enforcement officers and agents of the City of Columbus.

## (IV)
## STATEMENT OF FACTS

14.     The killing of Decedent Ball occurred in Lowndes County, Mississippi on October 16, 2015.

15.     Prior to the shooting of Decedent Ball by Defendant Boykin on October 16, 2015, Defendants Carleton, Boykin, Branch, Young and Mittan were employed by the City of Columbus as law enforcement officers. At all times material hereto, these Defendants were acting under color of state law.

16.     Prior to the shooting of Decedent Ball, the City of Columbus equipped its officers with recording devices including, but not limited to, body cameras. The purpose of these recording devices, including body cameras, was to document all interactions by law enforcement with the

public to preserve evidence and to ensure that its officers acted in a proper manner during law enforcement activities. Upon information and belief, the Columbus Police Department had a body camera policy at the time of Decedent Ball's death to record all encounters with the public from start to finish.

17.     Upon information and belief, Defendants Boykin and Branch had previously failed to activate their body cameras during law enforcement activities but were not properly disciplined.

18.     With respect to Defendant Boykin's previous failure to activate his body camera, Mayor Robert E. Smith, Sr. and Chief Carleton received a letter and a draft of a Complaint against the City of Columbus and Defendant Boykin on November 4, 2014, from attorney Jim Waide on behalf of Don Deloach. The letter requested Mayor Smith and Chief Carleton forward the draft Complaint to their carrier to determine if there would be interest in attempting to resolve the issue set forth in the Complaint without litigation. The pertinent allegations of this draft complaint sent to Chief Carleton and Mayor Smith include:

3.
This action is authorized by 42 U.S.C. §1983.

4.
At all relevant times, Plaintiff, a black person, was employed as a manager of the K-Mart department store located in Columbus, Lowndes County, Mississippi. At all relevant times, Defendant Boykin was a Columbus, Mississippi police officer and acted under color of state law.

5.
On or about June 15, 2014, at approximately 3:35 a.m., Plaintiff was sitting in his vehicle, with his inside light on, looking over paperwork immediately prior to leaving his automobile to open the K-Mart store. Plaintiff looked in his rearview mirror and observed approximately four (4) white policemen pull up behind him in their cars. Plaintiff exited the vehicle to try to see what was going on.

6.
The first officer on the scene, Officer Bill Smith, asked for Plaintiff's driver's license. Plaintiff told Smith that he could not see Plaintiff's driver's license, but if he would wait a few minutes, he would see all the employees inside of the store and would know that Plaintiff's presence was legitimate. Plaintiff informed Smith that he had done nothing wrong. Further, Plaintiff asked all of the officers to turn on the recorders because he wanted the mayor and the police chief

7

to have an accurate version of what happened. Officer Smith asked Plaintiff if he wanted to be "protected," and Plaintiff responded that he did not have any problem being protected, but he did have a problem with four (4) white police officers approaching him when he had done nothing wrong. Plaintiff told the officers that no call had been made from the store, and the store was the only business at the location. Plaintiff further told the officers that he was being harassed, and if any wrongdoing had occurred, his security department would have called the police department.

7.

While Plaintiff was having conversation with Smith, Defendant Boykin interrupted, took over the conversation and told Plaintiff that the officers were in the parking lot because they were getting ready to serve warrants. Plaintiff responded that this had nothing to do with him. Plaintiff's response angered Defendant Boykin, causing Defendant Boykin to grab Plaintiff, shove him against his car, handcuff him and place him under arrest.

8.

The reason for the arrest of Plaintiff was Plaintiff's exercise of his First Amendment rights, by first having explained to the officers that he did not like being accosted by four (4) officers, by telling them that they should wait to see about his employees coming in to the store, with the reciprocating statement being Plaintiff's having told the officers that their presence in the parking lot to serve warrants had nothing to do with him. Additionally, because Plaintiff had done nothing wrong, and was taken to jail for disagreeing with Defendant Boykin, Plaintiff charges he was the victim of an arrest because of his race, black.

9.

Following his arrest, Plaintiff was taken to the Columbus jail and was strip-searched and given a body cavity search. He was held in jail for approximately one hour until he posted $457.00 in a cash bond. At Municipal Court, all charges against Plaintiff were dismissed.

10.

The statements which Plaintiff made to the officers were all protected by the United State Constitution Amendment One. Plaintiff is the victim of racial profiling, since Defendant Boykin singled him out for arrest because he was black, because all of the Columbus police officers initially approached him because of his race, black, and the officers' arbitrary refusal to accept Plaintiff's explanation for his presence (being the manager) at the store.

11.

All of the officers at the scene refused to turn on their recorders so that the conversation could be accurately reported, even though City of Columbus official police policy required them to turn on their recorders, and even though Plaintiff had specifically requested that they turn on their recorders. The officers refused to turn on their recorders because they did not want any record of the conversation.

12.

Defendant City is required, under the Mississippi Tort Claims Act, to indemnify Defendant Boykin for any damages that might be awarded against him.

8

13.

Arresting Plaintiff because he exercised his free speech rights by making a statement to the effect of the officers being there had nothing to do with him, and because he is black, represents outrageous conduct, such that punitive damages should be awarded.

19. Based on the allegations of the draft complaint submitted by Attorney Waide on behalf of Don Deloach, and prior to the killing of Decedent Ball, the City of Columbus, Defendant Carleton and Mayor Smith had been placed on specific notice that Defendant Boykin and other officers of the City of Columbus had engaged in racial profiling, failed to activate their recording devices in violation of policy and violated the civil rights of Don Deloach. As a result of the letter from Mr. Waide and draft Complaint on behalf of Don Deloach, the City of Columbus settled Mr. Deloach's claim without the necessity of filing a lawsuit. Despite the serious allegations in Deloach of racial profiling and failing to activate body cameras, the City of Columbus failed to make changes to its policies to ensure that its officers did not engage in misconduct including requiring officers and supervisors to download and review body camera footage.

20. With respect to the Deloach matter and Defendant Boykin in general, the City of Columbus noted the following in filed pleadings in a lawsuit filed by Defendant Boykin against the City of Columbus[1] for employment discrimination and civil rights violations:

### INTRODUCTION

This is a case alleging that the Mayor and City Council of the City of Columbus wrongfully terminated Canyon Boykin from his employment as a police officer with the City. Shortly before his termination, Mr. Boykin shot and killed a black criminal suspect on October 16, 2015. The Mayor and Council voted to terminate after it was discovered that, at the time of the shooting, Mr. Boykin did not have on his body camera, violated the City's social media policy by posting to the world-wide web various inappropriate messages (including one using the

---

[1] On February 8, 2016, Defendant Boykin filed a federal lawsuit against the City of Columbus in the USDC for the Northern District of Mississippi, *Boykin v. City of Columbus*, Docket No. 1:16-cv-25-SA-DAS. In the filed Complaint, Defendant Boykin alleges that the City of Columbus violated his constitutional right to due process and discriminated against him based on race when he was constructively discharged and/or fired after the killing of Decedent Ball.

"n" word) and had an unauthorized civilian in the patrol vehicle on the night of the shooting. Notably, Mr. Boykin had previously failed to record a 2014 arrest of a black male suspect (Don Deloach) and that failure resulted in a claim being made against Boykin and the City. The instant motion seeks to block the jury from knowing that in 2014 Jim Waide represented Don Deloach and alleged that Canyon Boykin singled Deloach out for arrest because of his race, black.

\* \* \* \* \*

5. ... Jim Waide's allegations that Boykin singled out Mr. Deloach because of his race were on the mind of the Mayor and Council when they voted to terminate Boykin after he shot and killed Ricky Ball (a black man) and again failed to have on his recording device for the second time within only a few months while effecting an arrest. This time however, a person was shot and thereafter he died. Thus, the failure to activate the recorder was much more significant this time than the last one.

\* \* \* \* \*

9. Boykin alleges that the relevancy of the claims by Deloach (that Boykin singled him out because of his race and failed to turn on his recorder in violation of City policy) are not dependent upon identifying the attorney who represented Deloach. The City disagrees. Officer Boykin's prior failure to activate his recorder in violation of City policy is relevant as to why he was terminated this time. This is because after the Deloach arrest in 2014 he was punished and given three days suspension without pay and instructed in writing of the importance of turning on the recorder. The fact that Mr. Deloach is a black man is also relevant in this case because Mr. Boykin's racist postings to the worldwide web may indicate a racial bias against black people and his prior failure to activate his recorder when arresting a black man provides additional support for such a conclusion. Further, the City submits that the identity of Deloach's legal counsel is relevant. This is because of the fact that Jim Waide and his firm have an excellent reputation and Waide's allegations that Boykin singled Deloach out because of his race and failed to activate his recorder after being asked to turn it on were a factor in why the city compromised with Deloach. More importantly, they were a factor in the City's decision to terminate Boykin in this case. Thus, it appears to past the test for relevancy under FRE Rule 401. Recall that in the case now before the court Mr. Waide takes a position that is on the opposite end of the extreme than he did in the earlier case. Now Jim Waide alleges that "it is well-established that Boykin is not a racist." This is exactly opposite of the allegations made in Exhibit "1" hereto.

11. The City admits that Jim Waide's previous representation of Don Deloach and the nature of the claims (that Boykin singled out and arrested Don Deloach because of his race and refused to activate recorder even after being asked to do so) would be prejudicial to the plaintiff in this case. Of course, evidence which is probative of a fact in issue usually is prejudicial to the party against whom it is

10

offered. That is why for example the confession of a criminal suspect is not excluded from evidence even though its admission is highly prejudicial to the defense. *See e.g. Parker v. Randolph,* 442 U.S. 62, 72, 99 S. Ct. 2132, 60 L. Ed. 2d 713 (1979) (plurality opinion) ("[T]he defendant's own confession [is] probably the most probative and damaging evidence that can be admitted against him." (internal quotation marks omitted).

   12.   Jim Waide's prior representation of Mr. Deloach in the case against the City and Boykin is relevant in this case because, then the City acted to terminate Mr. Boykin, the City knew that Jim Waide alleged that Boykin acted wrongfully in his arrest of Deloach because of a racial animus against black people.

*Boykin v. City of Columbus*, Docket No. 1:16-cv-25-SA-DAS; DE 35 & 35-1 (Response of City of Columbus to Expedited Motion in Limine).

   21.   Based on these judicial admissions, the City of Columbus had knowledge that Defendant Boykin had made racists postings (including the use of the "n" word) on social media, in addition to previous claims of racial profiling and failure to activate body cameras set forth in the Deloach claim.

   22.   On or about October 16, 2015, Defendants Boykin, Branch and Young were officers of the Columbus Police Department and specifically members of the Columbus Police Department's now-disbanded Special Operations Group. At this time, Alisha Stanford, who is currently Defendant Boykin's wife and was Defendant Boykin's girlfriend at the time, was an unauthorized civilian riding in the vehicle with Defendants Boykin, Branch and Young.

   23.   On or about October 16, 2015, at approximately 10:08 pm, Defendants Boykin, Branch and Young (with unauthorized civilian Alisha Stanford) attempted a traffic stop due to alleged traffic violations (no tag light and careless driving) near the intersection of 22nd Street North and 15th Avenue North of a vehicle. At the time of this stop, the vehicle being pulled over was being driven by Shannon Brewer, a Caucasian female, and Defendant Ball was riding as a passenger in the vehicle.

24.     As the basis for the stop was a violation of traffic laws and Decedent Ball was a passenger in the vehicle, there was no reasonable suspicion or probable cause to believe that Decedent Ball had committed any crime.

25.     After the Individual Defendants signaled Ms. Shannon Brewer to stop, Ms. Brewer began to slow her vehicle to stop. At this time, Decedent Ball jumped out of the vehicle and fled on foot. While this conduct may have provided officers with reasonable suspicion to detain him and perform a *Terry* stop, this conduct did not provide officers with probable cause to believe that Decedent Ball had committed a crime or to arrest him.

26.     After Decedent Ball exited the car and fled on foot, Defendants Boykin, Branch and Young exited their vehicle to complete the traffic stop. Further, the Individual Defendants pursued Mr. Ball on foot.

27.     Based on the few documents that Plaintiffs were able to obtain prior to filing, two Uniform Incident Reports were completed by Officer Equires on October 28, 2015. In both reports, Decedent Ball is identified as the person arrested and the charges listed are Failure to Obey Police Officer/Resisting Arrest/Threatening an Officer. However, the Narrative Description of Incidents are not consistent and are reproduced as follows:

Narrative # 1

Subject fled passenger side of motor vehicle stopped for traffic violations, resisted arrest, pointed pistol at officer. Officer shot suspect. Suspect ran off. LCSO brought K-9 unit. Suspect located lying on ground with gunshot wound. Property involved recovered. Subject taken to BMHGT by ambulance. MBI contact and arrived on scene.

Narrative # 2

Subject fled passenger side of motor vehicle stopped for traffic violations, resisted arrest. Officer tased subject. Subject pointed pistol at officer. Officer shot suspect. Suspect ran off. LCSO brought K-9 unit. Suspect located lying on ground with gunshot wound. Property involved recovered. Subject taken to BMHGT by ambulance. MBI contact and arrived on scene.

12

28.     Plaintiff avers that if Decedent Ball was tasered by Defendant Boykin, Decedent Ball would have been incapacitated and, therefore no further force would have been necessary or authorized to further detain Decedent Ball by the Individual Defendants.

29.     Thereafter, the Individual Defendants aver that Decedent Ball pointed a pistol at officers and Defendant Boykin shot Decedent Ball who continued to flee, despite being struck by at least two bullets.

30.     The autopsy report performed on Decedent Ball indicates that Decedent Ball received two gunshot wounds. Both gunshot wounds entered the back of Decedent Ball's body. Accordingly, Decedent Ball's back was turned to the officers at the time that he shot.

31.     Upon information and belief, Decedent did not have a weapon. Therefore, the use of deadly force against Decedent Ball by Defendant Boykin was unjustified and unconstitutional as Decedent Ball did not present a danger to Defendant Boykin or others and did not place the Individual Defendants' lives in danger.

32.     Alternatively, if Decedent Ball did have a weapon, Decedent Ball did not point the weapon at Defendant Boykin or others as he was fleeing from a *Terry* stop and was shot in the back. Therefore, Decedent Ball could not have placed the Individual Defendants' lives in danger while fleeing the Individual Defendants on foot, with his back turned to the Individual Defendants.

33.     Upon information and belief, Decedent Ball was ultimately arrested approximately a block and a half from the initial traffic stop. Decedent Ball was subsequently taken by ambulance to Baptist Memorial Hospital- Golden Triangle, where he was ultimately pronounced dead.

34.     Upon information and belief, a 9 mm pistol was allegedly found near Decedent Ball's body after the shooting.

13

35.     According to public statements made by city officials, the 9 mm pistol found on the scene allegedly had been stolen from a Columbus Police Department Garrett Mittan home in the months prior to October 16, 2015. Significantly, the alleged theft of the 9 mm pistol from Defendant Mittan was not reported stolen until October 28, 2015, which is 12 days after Decedent Ball was killed. Upon information and belief, Defendant Garrett Mittan was among one of the first of the Columbus Police Department officers to arrive on the scene and must have planted or allowed this this weapon to be placed near Decedent Ball's body in an effort to justify Defendant Boykin's unconstitutional shooting of Decedent Ball.

36.     As previously noted, the City of Columbus has equipped its officers with recording devices, including body cameras, and had a policy requiring officers to activate their body cameras during all citizen encounters. However, Defendants Boykin, Branch, Young and Mittan failed to activate their body cameras in violation of this policy. As Defendant Boykin and other Columbus Police Department officers had previously failed to activate their body cameras during their arrest of Don Deloach in an effort to conceal a previous incident of racial profiling, Plaintiff submits that the Individual Defendants likewise failed to activate their body cameras in an effort to conceal their improper actions with respect to Decedent Ball. With respect to Defendants Boykin and Branch, this was at least the second time that they failed to activate their body cameras during citizen encounters.

37.     After the killing of Decedent Ball, Defendant Boykin's employment was terminated by the Columbus City Council after receipt of Defendant Boykin's resignation. In Defendant Boykin's lawsuit against the City of Columbus, Defendant Boykin alleges Defendant Carleton gave Defendant Boykin the right to resign before he was terminated "so he would not have a termination on his record, thereby jeopardizing his future employment opportunities." The

conduct of Defendant Carleton in allowing Defendant Boykin to resign instead of investigating this matter and terminating him evidences Defendant Carleton's deliberate indifference to the rights of citizens.

38. At the time of the events which are the subject matter of this Complaint, Defendants Boykin, Branch, Young and Mittan violated the policies of the City of Columbus by allowing an unauthorized civilian (Defendant Boykin's girlfriend) to ride in their patrol car and/or by failing to activate their body cameras in an effort to conceal their actions. Further, Defendant Boykin also violated the City of Columbus' social media policy by posting to the world-wide web various inappropriate messages regarding women, disabled people and blacks (including one using the "n" word).

39. Upon information and belief, Defendant Carleton resigned shortly after the shooting incident as Chief of Police to take a position as a training officer with the Oxford Police Department.

40. Upon information and belief, shortly thereafter, Assistant Police Chief Tony McCoy and Columbus Police Department Narcotics Officer Joseph Streval also resigned prior to the end of 2015.

41. Upon information and belief, Defendant Young has since resigned from the Columbus Police Department.

42. Defendant Mittan, in addition to numerous other police officers, has since resigned from the Columbus Police Department.

43. Upon information and belief, Columbus Police Department has lost nineteen officers and hired ten since February, 2016.

15

44.     Upon information and belief, Columbus Police Department has forty-five officers on staff; full strength of the department is sixty-seven but the City Council previously approved hiring ten additional officers bringing capacity to seventy-seven.

45.     Defendant Boykin subsequently filed a federal lawsuit against Columbus alleging wrongful termination.

46.     As previously noted, and prior to the October 16th shooting, Defendant Boykin failed to record a 2014 arrest of a black male suspect (Don Deloach) and that failure resulted in a claim being made against Defendant Boykin and Defendant City of Columbus where it was alleged that Defendant Boykin and other Columbus Police Officers "*singled Plaintiff (Don Deloach) out for arrest because he was black, because all of the Columbus police officers initially approached plaintiff because of his race, black, and the officers' arbitrary refusal to accept Plaintiff's explanation for his presence (being the manager) at the store.*"

47.     After Decedent Ball was killed, the City of Columbus implemented several changes regarding the Columbus Police Department's policy on camera use, including but not limited to training and/or retraining of its officers regarding camera use, stiffer penalties for officers who fail to comply with the department's body camera policy, and officers and supervisors must download and review videos after each shift.  Given the prior claim of racial profiling and failing to activate body cameras in Deloach which was settled by the City of Columbus, these changes should have been made after the Deloach claim to ensure that officers were not allowed to continue to conceal their improper actions.

48.     Further, after Decedent Ball was killed, the City Council created a permanent citizens advisory committee to act as a liaison, between the department and the community to review citizen complaints and to help build transparency and public trust.

16

49.     Upon information and belief, the Mississippi Bureau of Investigation completed a review of the case and sent it to District Attorney Scott Colom in June, 2016.

50.     Upon information and belief, District Attorney Scott Colom handed the case to a special prosecutor, appointed by Mississippi Attorney General Jim Hood.

51.     Defendant Canyon Boykin was indicted by the grand jury for manslaughter on September 8, 2016.

52.     As a result of the joint and concurrent actions of the Defendants, Decedent Ball was killed and his constitutional rights were violated.

## (V)
## CAUSES OF ACTION

53.     The Plaintiff reasserts and incorporates all previous paragraphs into each subsequent Count.  Each enumerated count also incorporates all allegations of all other counts.

### COUNT ONE:
### INDIVIDUAL LIABILITY OF DEFENDANTS' BOYKIN, BRANCH, YOUNG, MITTAN AND JOHN DOES I-X

54.     These Defendants committed the above described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers and employees of Defendant City of Columbus and substantially deprived Decedent Ball of his clearly established rights, privileges and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. §1983 and deprived Plaintiff of the rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution including, but not limited to:

    a.    Freedom from unreasonable search and seizure of his person;

    b.    Freedom from deprivation of liberty without due process of law;

    c.    Freedom from summary punishment;

    d.    Freedom from the use of excessive and deadly force;

    e.    Denial of equal protection of the law;

17

f.     Freedom from racial discrimination;

g.     Failure to intervene and stop the violation of Decedent Ball's constitutional rights by other Defendants and officers; and

h.     Freedom from arbitrary governmental activity, which shocks the conscience of a civilized society.

55.     These Defendants conspired to interfere with Plaintiff's civil rights by committing

the above described actions and/or omissions under the color of law and by virtue of their authority

as law enforcement officers and employees of the City of Columbus by conspiring to substantially

deprive Plaintiff of his clearly established rights, privileges and immunities guaranteed to him as

citizens of the United States in violation of 42 U.S.C. §§1981 and 1985 including, but not limited

to:

a.     Failing to activate their body cameras to conceal their actions;

b.     Failing to prepare proper reports of the events and/or having prepared inconsistent and false incident reports;

c.     Engaging in a cover up and planting evidence in an effort to escape liability for the unconstitutional killing of Decedent Ball; and

d.     Conspiring for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice.

56.     These Defendants interfered with Decedent Ball's civil rights by committing the

above described actions and/or omissions with an intent to discriminate against Decedent Ball on

the basis of his race, under the color of law, by virtue of their authority and in the scope of their

employment as law enforcement officers and employees of the City of Columbus in violation of

42 U.S.C. §1981 and Title VI of the Civil Rights Act of 1964 by depriving Plaintiff, based on his

race or color, of his clearly established rights to equal benefit and like punishment. Defendants

denied Plaintiff equal protection of laws because of his race or color.

57.     The Individual Defendants and John Does I-X did individually, jointly and collectively violate the aforementioned constitutional rights of Decedent Ball.

58.     The Individual Defendants and John Does I-X individually, jointly and collectively witnessed other officers violate the aforementioned constitutional rights of Decedent Ball but conspired to either encourage the violations of Decedent Ball's constitutional rights or failed to intervene to prevent Decedent Ball's constitutional rights from being violated by fellow officers by covering up their improper and unconstitutional actions. Therefore, these Defendants are jointly and severally liable for the violation of Decedent Ball's constitutional rights.

59.     As a result of the following acts and omission, these Defendants violated Decedent Ball's constitutional and federally protected rights and, Decedent Ball was killed.

## COUNT TWO:
## MUNICIPAL LIABILITY AGAINST CITY OF COLUMBUS

60.     The City is under a constitutional duty to properly hire, provide policy guidance, train, supervise and discipline the members of the CPD to ensure that the policing activities of the CPD are run in a lawful manner, preserving to the citizens of the City the rights, privileges and immunities guaranteed to them by the Constitutions of the United States of America and the State of Mississippi and the laws of the United States of America and the State of Mississippi.

61.     The City permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice or custom of its police officers, including Defendants Boykin, Branch, Young, Mittan and John Does I-X, violating the constitutional rights of the public at large, including Decedent Ball.

62.     The actions of the Individual Defendants complained of herein were unjustified, unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of Decedent Ball, if any, and constituted an unreasonable search and seizure effectuated through the use of

19

excessive and deadly force and a deprivation of Decedent Ball's constitutional rights secured to him by the Fourth and Fourteenth Amendment of the United States Constitution and other federal protected rights.

63.     The City is directly liable to the Plaintiff for damages due to following policies, practices and customs of the CPD which were in effect at the time and which were maintained with deliberate indifference to the constitutional rights of citizens and which were the underlying cause of the constitutional violations:

      a.     Failure to provide the Columbus Police Department with sufficient funds for proper operation of the CPD;

      b.     Failure to properly and adequately train the CPD's officers, including but not limited to the Individual Defendants, regarding obvious law enforcement activities including, but not limited to:
1) patrolling procedures;
2) traffic stops;
3) *Terry* stops;
4) misdemeanor stops;
5) felony stops;
6) use of force;
7) use of deadly force;
8) use of firearms and intermediate force weapons;
9) apprehending/arresting suspects;
10) taking cover;
11) foot pursuits;
12) use of audio/video recording devices;
13) providing medical attention;
14) summoning medical attention;
15) arresting procedures;
16) completion of reports and collection of evidence;
17) completion of Use of Force Reports;
18) investigating officer compliance with policy and procedure and critical incidents;
19) monitoring officer compliance with policy including;
20) early warning systems;
21) use of social media;
22) racial profiling;
23) allowing civilians in vehicles during law enforcement activities; and
24) civil rights laws and violations.

c.      Failure to properly and adequately supervise and discipline the CPD's officers, including but not limited to the Individual Defendants, regarding obvious law enforcement activities including, but not limited to:
1) patrolling procedures;
2) traffic stops;
3) *Terry* stops;
4) misdemeanor stops;
5) felony stops;
6) to use of force;
7) use of deadly force;
8) use of firearms and intermediate force weapons;
9) apprehending/arresting suspects;
10) taking cover;
11) foot pursuits;
12) use of audio/video recording devices;
13) providing medical attention;
14) summoning medical attention;
15) arresting procedures;
16) completion of reports and collection of evidence;
17) completion of Use of Force Reports;
18) investigating officer compliance with policy and procedure and critical incidents;
19) monitoring officer compliance with policy including;
20) early warning systems;
21) use of social media;
22) racial profiling;
23) allowing civilians in vehicles during law enforcement activities; and
24) civil rights laws and violations.

d.      Failure to adequately monitor and evaluate the performance of the CPD's officers, including but not limited to the Individual Defendants, regarding their compliance with the laws and policies, practices and customs with respect to:
1) patrolling procedures;
2) traffic stops;
3) *Terry* stops;
4) misdemeanor stops;
5) felony stops;
6) to use of force;
7) use of deadly force;
8) use of firearms and intermediate force weapons;
9) apprehending/arresting suspects;
10) taking cover;
11) foot pursuits;
12) use of audio/video recording devices;
13) providing medical attention;
14) summoning medical attention;

21

15) arresting procedures;

16) completion of reports and collection of evidence;

17) completion of Use of Force Reports;

18) investigating officer compliance with policy and procedure and critical incidents;

19) monitoring officer compliance with policy including;

20) early warning systems;

21) use of social media;

22) racial profiling;

23) allowing civilians in vehicles during law enforcement activities; and

24) civil rights laws and violations.

e.    Failure to adequately respond to and investigate complaints regarding officer misconduct by the citizenry of the CPD's officers, including but not limited to the Individual Defendants, regarding:

1) patrolling procedures;

2) traffic stops;

3) *Terry* stops;

4) misdemeanor stops;

5) felony stops;

6) to use of force;

7) use of deadly force;

8) use of firearms and intermediate force weapons;

9) apprehending/arresting suspects;

10) taking cover;

11) foot pursuits;

12) use of audio/video recording devices;

13) providing medical attention;

14) summoning medical attention;

15) arresting procedures;

16) completion of reports and collection of evidence;

17) completion of Use of Force Reports;

18) investigating officer compliance with policy and procedure and critical incidents;

19) monitoring officer compliance with policy including;

20) early warning systems;

21) use of social media;

22) racial profiling;

23) allowing civilians in vehicles during law enforcement activities; and

24) civil rights laws and violations.

f.    The CPD is aware that a "code of silence" exists among members of its department whereby officers of the CPD will not report misconduct of fellow officers and has failed to take such steps to preclude its existence in the CPD. As a result of the "code of silence" which exists at the CPD, officers act unconstitutionally without fear of discipline from the CPD.

64.     The City knew or should have known that the above-referenced policies, practices, and/or customs, translated into an under qualified and undertrained police force that was ill-equipped to perform obvious and necessary law enforcement activities without exposing the public to unwarranted danger of injury.  Therefore, the City's policymakers were on actual or constructive notice of the deficiencies with its policies, practices and customs which make officer misconduct a foreseeable consequence.

65.     The City knew or should have known that the above-referenced policies, practices, and/or customs, would likely lead to the serious injury or death to persons in the City of Columbus and that such injuries were foreseeable; yet, they disregarded that risk.

66.     The aforementioned policies, practices and customs were inadequate in relation to the specific tasks their officers must routinely perform and therefore, illustrated its deliberate indifference and/or reckless disregard to the consequences of officer misconduct.

67.     The City's above referenced policies, practices and/or customs violated Decedent Ball's constitutional rights; and said policies, practices and/or customs were the moving force behind and proximate cause of said violations.

68.     The City's above referenced policies, practices and/or customs demonstrated a deliberate indifference on the part of policymakers of the City to the constitutional rights of citizens, including Decedent Ball, and was the proximate cause of the injuries and damages sustained by Decedent Ball, and evidenced a reckless or callous indifference to the federally protected rights of Decedent Ball.

69.     By failing to recognize or correct the deficiencies with its policies, practices and customs, the City consciously disregarded the known and foreseeable consequences thereof.

23

70.     The City's deliberately indifferent policies, practices and customs were closely related to Decedent Ball's injuries and death.

71.     The City's deliberately indifferent policies, practices and customs were the moving force behind Decedent Ball's injuries, his death, and the deprivation of his constitutional rights.

72.     There is a direct causal link between the policies, practices and customs and the violation of Decedent Ball's constitutional rights.

73.     As a direct and proximate result of the foregoing policies, practices and customs of the City, the violation of the constitutional rights of citizens by the members of the CPD and the Individual Defendants was substantially certain to occur. In addition, as a direct and proximate result of the aforementioned policies, practices and customs of the City, Decedent Ball's constitutional rights were violated and he was injured and killed.

**COUNT THREE:**
**SUPREVISORY LIABILITY OF DEFENDANT CARLETON**

74.     At all relevant times, Defendant Carleton was the Chief of Police of the City of Columbus with final policy-making authority with respect to law enforcement activities.

75.     In the course and scope of his employment, Defendant Carleton did in fact establish policies, practices and procedures for the CPD.

76.     All of the policies, practices, and customs attributed to the City in this Complaint were personally designed, implemented, and enforced at least in part by Defendant Carleton.

77.     Defendant Carleton personally condoned, encouraged, approved, or at least implicitly authorized the conduct of the Individual Defendants by having prior warning of their violation of policy, racial animus and other improper conduct set forth herein.

24

78. Defendant Carleton personally failed to properly hire, train, supervise, monitor and discipline officers of the CPD, including the Individual Defendants on particular tasks required of officers as set forth in Count II.

79. By failing to recognize or correct these deficiencies with the policies, practices and customs of the CPD, Defendant Carleton personally showed deliberate indifference to the rights of people with whom CPD regularly came in contact, including Decedent Ball. This deliberate indifference is illustrated by allowing Defendant Boykin to resign to not jeopardize his law enforcement opportunities while knowing that Defendant Boykin was unfit to serve as a law enforcement officer due to repeated policy violations and improper conduct.

80. By failing to recognize or correct these deficiencies with the policies, practices and customs of the CPD, Defendant Carleton consciously disregarded the known and foreseeable consequences thereof.

81. These deficiencies with the policies, practices and customs of the CPD were closely related to Decedent Ball's injuries and death.

82. There is a direct causal link between the aforementioned policies, practices, and customs and the violation of Decedent Ball's Constitutional rights.

83. As a direct result of Defendant Carleton's policy, practice, or customs, Decedent Ball's constitutional rights were violated and Decedent Ball was killed.

## COUNT FOUR:
## STATE LAW CLAIMS

84. The acts and omissions set forth herein constitute assault, battery, wrongful death, outrageous conduct, conspiracy, negligence, gross negligence, and/or recklessness under the laws of the State of Mississippi.

25

85.     On September 27, 2016, Plaintiff submitted a notice of claim pursuant to the provisions of Mississippi Code Annotated, §11-46-11.

86.     Once the time to respond to the Notice of Claim has expired, Plaintiff reserves the right to amend this complaint to bring pendent state law claims pursuant to the Mississippi Tort Liability Act and common law.

## (VI)
## DAMAGES

87.     As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Decedent Ball's constitutional rights were violated and Decedent Ball was killed. Mr. Royal seeks recovery from the Defendants, both jointly and severally, of all damages to which he may be entitled for the wrongful death of Decedent Ball and his beneficiaries under the law for his wrongful death and which include, but are not limited to, the following:

a.     Physical pain and suffering;
b.     Emotional pain and suffering;
c.     Medical expenses;
d.     Funeral expenses;
e.     Loss of enjoyment of life;
f.     Loss of wages;
g.     Loss of earning capacity;
h.     Loss of consortium and services of Decedent Ball to his heirs and beneficiaries;
i.     Loss of the right to familial association with Decedent Ball to his heirs and beneficiaries;
j.     Hedonic damages;
k.     The full pecuniary value of the life of Decedent Ball;
l.     Punitive damages against the applicable Defendants;
m.     Pre- and post-judgment interest;
n.     Statutory and discretionary costs;
o.     Attorney's fees;
p.     A declaratory judgment that the acts and conduct herein was unconstitutional;
q.     Injunctive relief precluding the Defendants from engaging in the conduct complained of herein in the future and requiring the City of Columbus to provide proper policy, training and supervision of its officers and holding them accountable for their misconduct; and
r.     All such further relief, both general and specific, to which he may be entitled under the premises.

## PRAYERS FOR RELIEF

88.     Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said Paragraphs a part hereof as if fully set forth herein.

89.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the Defendants, both jointly and severally, for the injuries sustained and wrongful death of Decedent Ball and prays for a judgment against the Defendants for compensatory damages in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

90.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues Defendants, both jointly and severally and prays for a judgment against the applicable Defendants for punitive damages in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

91.     **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

Respectfully submitted,

By: _____
ANDREW C. CLARKE (MS BPR No. 9491)
Attorney for Plaintiff
6250 Poplar Avenue, Second Floor
Memphis, TN  38119
(901) 590-0761 (Telephone)
(901) 590-0779 (Facsimile)
aclarke@accfirm.com